

# NUMBER 13-13-00706-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

S.T.N. PROPERTIES, LTD.,                                             Appellant,

v.

RIO GRANDE VALLEY ALL TUNE &
LUBE, INC. AND BENNETT ABBITT,                              Appellees.

## On appeal from the 93rd District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

Appellant S.T.N. Properties, Ltd., (STN) filed a lawsuit asserting that appellees Rio

Grande Valley All Tune & Lube, Inc., and Bennett Abbitt[1] (collectively RGV) breached

---

[1] Bennett Abbitt, as the sole owner of Rio Grande Valley All Tune & Lube, Inc., entered into a personal guarantee on the commercial lease agreement with STN.

their commercial lease agreement with STN. The suit was tried before the bench of the 93rd District Court of Hidalgo County, Texas. After hearing the evidence and arguments of the parties, the trial court rendered a take nothing judgment in favor of RGV. STN raises three issues on appeal contending: (1–2) the evidence is legally insufficient to support the trial court's judgment because the evidence shows RGV breached the contract by failing to return the property in good condition, and/or by failing to pay required rental fees; (3) RGV is liable under the Texas Property Code for applying its security deposit to unpaid rent; and (4) it is entitled to attorney's fees. We affirm.

## I. BACKGROUND

In 1996, All Tune & Lube Co. entered into an agreement with STN whereby STN would build a facility subject to All Tune & Lube Co.'s specifications and would then lease the premises to All Tune & Lube Co.[2] STN complied with the terms of the agreement and All Tune & Lube Co. leased the premises from STN until 2001. In 2001, All Tune & Lube Co. sold its franchise to RGV, which entered into a new lease with STN for a period of ten years. The lease agreement required RGV to return the premises to STN in "as good condition as existed on the date of RGV's possession, ordinary wear and tear excepted."

In 2011, after the expiration of the ten-year lease term, RGV terminated the commercial lease in accordance with the lease agreement. After vacating the premises, RGV received notice that STN sought over $20,000 in damages for costs to restore the property to its original condition, past due fees, and violations of the Texas Property Code.

---

[2] All Tune & Lube, Co. is not a party to the suit.

RGV refused to pay the requested amount, and STN filed suit. Following a bench trial, the trial court entered a take nothing judgment in favor of RGV. This appeal followed.

## II. LEGAL SUFFICIENCY CHALLENGE

By its first issue, STN challenges the legal sufficiency of the evidence supporting the trial court's take nothing judgment in favor of RGV on its breach of contract claim.

### A. Standard of Review & Applicable Law

In reviewing the legal sufficiency of the evidence, we must consider the evidence in the light most favorable to the fact-finder's decision and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Legal sufficiency issues following a bench trial are reviewed in the same manner as legal sufficiency issues following a jury verdict. *See Pagel v. Whatley,* 82 S.W.3d 571, 575 (Tex. App.—Corpus Christi 2002, pet. denied). A legal-sufficiency review, in the proper light, must credit favorable evidence if reasonable fact-finders could, and disregard contrary evidence unless reasonable fact-finders could not. *City of Keller,* 168 S.W.3d at 827.

The fact-finder is the sole judge of witnesses' credibility and may choose to believe one witness over another; we may not impose our own opinion to the contrary. *Id.* at 819. In an appeal from a bench trial, we do not invade the fact-finding role of the trial court, which alone determines the credibility of the witnesses, the weight to give their testimony, and whether to accept or reject all or any part of that testimony if the evidence falls within the zone of reasonable disagreement. *See B & S Welding LLC Work Related Injury Plan v. Olivia-Barron,* 447 S.W.3d 425, 429–30 (Tex. App.—Dallas 2014, no pet.).

Because it is within the fact-finder's province to resolve conflicting evidence, we must assume that it resolved all conflicts in accordance with the verdict if a reasonable human being could do so. *City of Keller,* 168 S.W.3d at 819.

In a nonjury trial, where no findings of fact or conclusions of law are filed or requested, it will be implied that the trial court made all the necessary findings to support its judgment.[3] *See Sixth RMA Partners, L.P. v. Sibley,* 111 S.W.3d 46, 52 (Tex. 2003). "When a party attacks the legal sufficiency of an adverse finding on an issue on which [it] has the burden of proof, [it] must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)). If there is no evidence to support the trial court's finding, we will review all of the evidence to determine whether the contrary proposition is established as a matter of law*. Id.*

STN bore the burden of proof on its breach of contract claim. In order to recover, STN was required to prove: (1) the existence of a valid enforceable contract; (2) STN's performance under the terms of the contract; (3) RGV's breach of the contract; and (4) RGV's breach caused STN injury. *Doss v. Homecomings Fin. Network, Inc.,* 210 S.W.3d 706, 713 (Tex. App.—Corpus Christi 2006, pet. denied). STN contends that RGV

---

[3] The trial court entered its final judgment in this case on October 30, 2013. On November 26, 2013, STN filed its request for findings of fact and conclusions of law with the clerk of the court. Texas Rule of Civil Procedure 296 states that a request for findings of fact and conclusions of law "shall be filed within twenty days after judgment is signed" with the clerk of the court. TEX. R. CIV. P. 296. STN failed to comply with the timing requirements of rule 296 and was therefore not entitled to findings of fact or conclusions of law. *See Sixth RMA Partners, L.P. v. Sibley,* 111 S.W.3d 46, 52 (Tex. 2003); *see also Serrano v. Ramos,* No.13-13-00476-CV, 2015 WL 3826794, at *5 (Tex. App.—Corpus Christi June 18, 2015, no pet. h.) (mem. op.) (recognizing that a party's failure to comply with rule 296 of the Texas Rules of Civil Procedure has the same effect as failing to request findings of fact and conclusions of law).

"breached" the contract by: (1) damaging the property, and (2) failing to pay required rental fees. To prevail on its legal sufficiency challenge, STN must show that it established these elements as a matter of law. *See City of Keller,* 168 S.W.3d at 827; *Dow Chem. Co.,* 46 S.W.3d at 241; *Formosa,* 960 S.W.2d at 48; *Doss,* 210 S.W.3d at 713.

### B.    Property Damage

STN asserts that RGV breached the lease agreement because the premises were not returned in the same condition as when STN let the property, and that RGV's breach caused it to incur damage. The commercial lease agreement between the parties clearly required RGV to deliver the property to STN in "as good condition as existed on the date of Lessee's possession, ordinary wear and tear excepted." "Normal wear and tear" is defined in the Texas Property Code as "deterioration that results from the intended use of the commercial premises, including breakage or malfunction due to age or deteriorated condition, but the term does not include deterioration that results from negligence, carelessness, accident, or abuse of the premises, equipment, or chattels by the tenant . . . ." TEX. PROP. CODE. ANN. § 93.006(b) (West, Westlaw through Ch. 46, 2015 R.S.).

During trial there was conflicting testimony concerning the property's state when RGV took possession in 2001. Abbitt, the sole owner of Rio Grande Valley All Tune & Lube, Inc., testified that STN did not do a "walk through" of the leased premises when RGV took possession of the property. Abbitt further testified that the premises were in poor condition. Specifically, Abbitt claimed "it was a mess. We had things unpainted,

5

you had fluids in the shop unmarked, fluids on the floor, used parts around, used parts outside. Building, basically, holes in the wall. Just unkept." Abbitt testified that during RGV's ten-year lease, he had the flooring painted once or twice, contracted for weekly cleaning services, and even won third place in a nationwide competition with All Tune & Lube for the appearance of the premises. Abbitt testified that upon vacating in September 2011, the premises were clean.

The parties did not conduct a "walk through" of the property before the premises were vacated. In fact, Abbitt testified that STN did not contact him to retrieve the keys until four to six weeks after he vacated the premises. When Abbitt was contacted by STN, Abbitt met with an STN representative and asked if they would conduct a "walk through" at that time. According to Abbitt, the representative just "shrugged and got in his car and left." During trial, STN admitted pictures into evidence purporting to depict the condition of the premises when RGV vacated. Abbitt did testify that in certain instances the premises looked "worse" than when he assumed possession, but he contended that any such change was the result of "normal wear and tear."

Larry Beakey, the owner of STN, testified on the entity's behalf. He stated that he obtained an estimate of $17,917.00 to repair the premises. Included in that estimate were costs for repainting the interior walls and interior flooring. On cross-examination Beakey admitted that those tasks are typically performed by the landowner after a tenant vacates. Also included in the estimate were charges to replace the air filters for the air conditioning unit. However, Beakey admitted that STN was the entity responsible for replacing air filters and factored those charges down to its tenants through its Common

6

Area Maintenance (CAM) fee.

The condition of the property on the date RGV leased the premises is the basis of STN's claim that the property was not returned in the same condition as it was when let. However, STN failed to provide any evidence depicting the condition of the property when the lease went into effect. The trial court could have therefore determined the damage, if any, was the result of normal wear and tear that occurred over the course of the ten-year commercial lease.

We determine STN did not conclusively establish that RGV "breached" the lease agreement. *See id.* We therefore do not reach STN's argument that it was damaged in the amount of $17,917 for the reasonable and necessary cost of repairs.

### C.    Payment of Additional Rental Fees

STN also argued before the trial court that RGV breached the commercial lease agreement by failing to pay the $1,542.13 CAM fee when it became due. According to the lease agreement, the CAM fee is a quarterly payment, categorized as "additional rent," and purportedly covers "all costs of operating and maintaining the common areas in a manner deemed by Lessor appropriate for the best interests of the tenants."

The lease specified that the CAM fees were to be paid within thirty days of the billing date. Before the lease expired, STN notified RGV that the final quarterly CAM fee in the amount of $1,542.13 was due. Abbitt tendered a check in the amount of $42.13 and instructed STN's attorney to take the remainder of the fee from the $1,500.00 security deposit. STN unilaterally returned the check and informed RGV that the security deposit would not be used to cover the final quarterly CAM payment.

There was testimony before the trial court that, pursuant to the terms of the lease agreement, STN could apply the security deposit to any outstanding fees upon termination of the lease. We determine that there was some evidence that RGV provided payment of the outstanding CAM fee upon termination of the lease regardless whether STN chose to utilize the payment. We conclude that STN failed to establish that RGV "breached" the lease agreement as a result of failure to pay the quarterly CAM payment, and therefore did not establish an essential element of its cause of action. *See id.* Because we determine that RGV did not breach the contract by failing to pay the CAM fee, we do not reach STN's contention that it was damaged in the amount of $2,632.75 for unpaid rent and late fees.

As we have determined that STN did not establish the elements of its claim as a matter of law, STN's challenge to the legal sufficiency of the evidence supporting the trial court's judgment fails. *See id.* We overrule STN's first issue.

## III. TEXAS PROPERTY CODE SECTION 93.010

We construe STN's second issue as a challenge to the legal sufficiency of the evidence supporting the trial court's finding that STN failed to prove, by a preponderance of the evidence, that RGV violated section 93.010 of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 93.010(a) (West, Westlaw through Ch. 46, 2015 R.S.). Specifically, STN asserts that RGV breached section 93.010 of the Texas Property Code when Abbitt attempted to apply the security deposit to the outstanding CAM fee. *See id.* RGV responds that section 93.010 applies specifically to the withholding of the "last month's rent" and is inapplicable to the quarterly CAM fee at issue. *See id.*

8

We review issues of statutory construction de novo. *Frazier v. GNRC Realty, LLC,* ___ S.W.3d ___, ___, No. 13-14-0047-CV, 2014 WL 4635881, at *2 (Tex. App.—Corpus Christi Aug. 29, 2014, pet. denied). "In construing statutes, we ascertain and give effect to the Legislature's intent as expressed by the language of the statute." *Id.* (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2006)). "We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired." *Id.* "Otherwise, we construe the statute's words according to their plain and common meaning." *Id.* "Every word of a statute must be presumed to have been used for a purpose, and every word excluded from a statute must also be presumed to have been excluded for a purpose." *Id.*

The Legislature, through the Texas Property Code, created statutory liability for a tenant that withholds the last month's rent for the leased premises. *See* Tex. Prop. Code. Ann. § 93.010. The statute provides that "[t]he tenant may not withhold any portion of the last month's rent on grounds that the security deposit is security for unpaid rent." *Id.* § 93.010(a). It further provides that a tenant in violation of section (a) is presumed to have acted in bad faith and provides statutorily defined damages of three times the rent wrongfully withheld and reasonable attorney's fees. *See id.* § 93.010(b).

Section 93.010 is titled "Liability for Withholding *Last Month's* Rent" and in subsection (a) specifically references that it prohibits the withholding of any portion of the *last month's* rent. *See id.* § 93.010(a) (emphasis added). Because we give effect to the Legislature's intent by giving the words of the statute their plain meaning, and presuming each word to have been used with purpose, we cannot disregard the Legislature's

9

deliberate use of the words "last month's rent" in the statute. *See Frazier,* 2015 WL 4635881, at *2. Had the Legislature intended to create statutory liability for the withholding of fees or other rental amounts, it could have written the statute to apply more broadly.

Though the commercial lease agreement identifies the quarterly CAM fees as "additional rents," it is clear from the record that the CAM fees were not a portion of the last month's rent that RGV owed STN. Beakey testified that RGV timely paid the last month's rent before vacating the premises. Therefore, because we determine the Legislature used the words "last month's rent" with purpose, and cannot disregard the plain language of the statute, we conclude that RGV did not violate section 93.010 of the Texas Property Code. *See id.*; TEX. PROP. CODE. ANN. § 93.010. There was therefore legally sufficient evidence supporting the trial court's take nothing judgment in favor of RGV. *See* TEX. PROP. CODE. ANN. § 93.010. We overrule STN's second issue.

## IV.    ATTORNEY'S FEES

By its third issue, STN contends that the trial court erred when it did not award attorney's fees to STN for the trial of the case and any subsequent appeal. Because we have determined that there was legally sufficient evidence supporting the trial court's judgment in favor of RGV, STN has no legal basis for the recovery of attorney's fees either under the terms of the lease agreement or the property code. *See id.* § 93.010(b); *Aguiar v. Segal,* 167 S.W.3d 443, 455 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). We overrule STN's third issue.

10

## IV.  CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 1st
day of September, 2015.