COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

BERNARDO L. GONZALEZ,

Appellant,

v.

MOMENTUM DESIGN &
CONSTRUCTION, INC.,

Appellee.

§

§

§

§

§

§

§

No. 08-19-00004-CV

Appeal from the

346th District Court

of El Paso County, Texas

(TC# 2018-DCV-3826)

## DISSENT

As the majority opinion recognizes, we steer a course between two Texas Supreme Court landmarks for what constitutes waiver of the right to pursue a Chapter 150 motion to dismiss. One landmark defines certain litigation activity, conducted over an eight-month period, as failing to establish waiver. *Crosstex Energy Services, L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384 (Tex. 2014). In the other landmark, certain litigation activity conducted over a forty-month period established waiver as a matter of law. *LaLonde v. Gosnell*, 593 S.W.3d 212 (Tex. 2019). As the majority opinion details, Momentum Design & Construction engaged in litigation conduct that in some way mirrors, but in some way differs, from that in *Crosstex* and *LaLonde*, and it did so over a seventeen-month period. Whether the facts of this case hew closer to one landmark versus the other is a close

question.  But in considering all the surrounding facts and circumstances, I conclude that no waiver is shown here.  Accordingly, I respectfully dissent.[1]

The ultimate question is whether Momentum waived its right to insist that Gonzalez timely file a certificate of merit as required by Chapter 150.  *See* TEX.CIV.PRAC. & REM.CODE ANN. § 150.002(a), (e) (providing for requirement to file certificate of merit and stating:  "A claimant's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant.").  Waiver is classically defined as the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). In this context, the question is whether Momentum's actions (and inaction) "clearly demonstrate[]" its intent to waive the right to pursue a section 150.002 motion to dismiss.  *Crosstex*, 430 S.W.3d at 393.  To meet that standard, the "surrounding facts and circumstances" must be "unequivocally inconsistent with claiming" that right. *LaLonde*, 593 S.W.3d at 218-19, *quoting Crosstex*, 430 S.W.3d at 393.  The *LaLonde* court describes this as a "high standard." *Id*. at 220.  The majority here correctly outlines the multi-factor test employed to analyze waiver, and I agree with how it evaluates all but two of those factors.[2]  My disagreement turns on the weight that the majority has placed on the "participation in discovery" and "seeking affirmative relief" factors.

---

[1] I join, however, all portions of the majority opinion, other than the final section resolving the question of whether Momentum waived its right to enforce section 150.002.

[2] *LaLonde* analyzed the surrounding facts and circumstances through five factors:  participation in discovery, the length of time before invocation of the right, the stage of the proceeding when the invocation occurred, the seeking of affirmative relief, and engaging in alternative dispute resolution.  *LaLonde*, 593 S.W.3d at 223-26.

*Participation in Discovery*

The *LaLonde* court wrote that "pursuing discovery oriented toward a resolution on the merits strongly indicates the defendant intends to litigate and, thus, waive the statute's threshold requirements." *LaLonde*, 593 S.W.3d at 224. "An implication of intent depends on the nature, degree, and extent of discovery activities under the circumstances." *Id.* Here, Momentum: (1) responded to discovery served on it; (2) served written discovery requests on Gonzalez and co-defendant CSA; (3) served notices of written discovery with subpoenas on third parties to collect employment records, medical records, and medical bills; (4) attended depositions of the plaintiff, the co-defendant, and presented its own witness for deposition; and (5) took what are likely three depositions of persons with some knowledge of the accident.

That Momentum responded to discovery served on it is hardly surprising nor improper. *LaLonde*, 593 S.W.3d at 223-24 ("If all the defendant does is parry a plaintiff's attacks . . . engaging in such discovery has little bearing on the defendant's intent to waive the right."). Momentum also served its own requests for disclosure, interrogatories and request for production, and notices of deposition on written questions to health care providers, Gonzalez's employer, and his workers compensation carrier.[3] Copies of the written discovery that Momentum served on Gonzalez is not in our record, so there is no way to tell if they were anything other than standard discovery. Under the law on the books at the time these discovery requests were all served, I cannot find fault with Momentum for taking these actions.

---

[3] While the majority notes that Momentum served thirteen notices of deposition on written questions and twenty-two subpoenas, it should be stated that Momentum sought the billing and medical records from nine providers, and it used separate notices of deposition for the medical records and for the billing records. The court reporting firm then issued subpoenas corresponding to each notice of deposition.

The 2014 *Crosstex* decision stated that "[a]ttempting to learn more about the case in which one is a party does not demonstrate an intent to waive the right to move for dismissal." *Crosstex*, 430 S.W.3d at 394, *quoting Jernigan v. Langley*, 111 S.W.3d 153, 157 (Tex. 2003). Based on that principle, the *Crosstex* court concluded that exchanging 11,000 pages of written discovery "provides negligible support to the waiver argument." 430 S.W.3d at 394. It was not until 2019--after this case had already been dismissed--that the *LaLonde* court shaded its *Crosstex* language to limit discovery to that which allowed one "to learn more about the case *to determine eligibility for dismissal . . . .*" *LaLonde*, 593 S.W.3d at 223-24 n.49, *citing Crosstex*, 430 S.W.3d at 394 (emphasis supplied). Prior to *LaLonde*, one might have assumed that run of the mill basic discovery to learn more about the case (i.e., what are the claims? who are the witnesses? what are the injuries?) would not risk waiving the Chapter 150 defense. And the first thing that most diligent trial counsel will do in a case is collect basic information--like medical records and bills--to evaluate their client's worst case scenario risks.[4]

The other merits discovery initiated by Momentum included party depositions (Gonzalez, CSA, and Momentum) and witnesses from El Paso Electric (Gonzalez's employer). Excerpts from two of those deposition transcripts were attached to Momentum's motion to dismiss, suggesting they were useful to pressing the motion. *Cf. LaLonde*, 593 S.W.3d at 224 ("Still, one could envision scenarios in which some discovery would be useful, such as when the discovery could help persuade the trial court to dismiss with prejudice, which is entirely in the trial court's discretion under section 150.002(e) . . ."). Other discovery depositions were not used to support

---

[4] It is also noteworthy that most of the depositions on written questions were served within the first thirty days from when Momentum answered. And it should not be unexpected for a party pulled into ongoing litigation to reflexively serve standard form discovery and records requests. Moreover, it is one thing to say that a party which has known about and contemplated a claim should pursue its best defense first, and quite another to impose that burden on a party pulled into litigation mid-stream.

4

the motion to dismiss. But we do not have all those transcripts in our record to know what was asked, and a lawyer does not always know whether a witness will be useful or not until a deposition is actually taken. Accordingly, we have no basis to know whether this substantive discovery was intended to aid, even if only in part, the development of the motion to dismiss. And as such, we cannot say that pursuing this discovery was "unequivocally inconsistent with claiming" protection under section 150.002. *LaLonde*, 593 S.W.3d at 218-19, *quoting Crosstex*, 430 S.W.3d at 393.

Finally, Gonzalez did not simply agree that Chapter 150 governs his claim against Momentum. Both below and on appeal he has argued that the certificate of merit requirement does not apply to his amended petition as it was not an "action" as defined by the statute. Had the trial court, or this Court agreed with that argument, Momentum would find itself in the position of defending the merits of the claim at trial. The act of serving basic discovery and engaging in party depositions tells me nothing more than Momentum's counsel did not consider himself prescient enough to predict how the courts might rule on a potentially dispositive motion.

*The Affirmative Relief Factor*

The majority also places emphasis on Momentum's filing of a motion to designate a responsible third party as an act to seek affirmative relief. However, the timing of the motion is important. The second amended petition that added Momentum to the lawsuit was filed July 28, 2016. Momentum answered on September 1, 2016. Co-defendant CSA filed its motion to designate responsible third parties, including Gonzalez's employer El Paso Electric, on September 7, 2016. Momentum then filed its similar motion the next day. As of September 8 when it filed that motion, Momentum's counsel had been in the case for a week and had seen that its co-defendant had filed a responsible third party motion just inside the statute of limitations

5

period.[5]  Rather than ascribe an intent to litigate the merits to this filing, I would look to the context and conclude the action was just as likely a lawyer protecting his client's interest out of an abundance of caution.  Moreover, a motion for leave to designate a responsible party only allows a defendant to seek a submission on the RTP if evidence is introduced at trial.  TEX.CIV.PRAC. & REM.CODE ANN. § 33.003(a) (stating the trier of fact determines the percentage of responsibility for each claimant, defendant, settling party, and responsible third party).  That is, the designation allows, but does not compel a reduction of the plaintiff's potential claim, and it is wholly dependent on the presentation of proof at some later stage of the proceeding.

*No Waiver is Shown*

We are directed to analyze waiver on a case-by-case basis.[6]  The overarching question is whether Momentum, as demonstrated by its actions or inactions, intended to waive its rights to seek a dismissal under the certificate of merit statute.  And relevant to that question is why

---

[5] The two-year statute of limitation would have run on September 10, 2016.  Section 33.004 of the Texas Civil Practice and Remedies Code prohibits a defendant from designating a responsible third party "after the applicable limitations period on the cause of action has expired with respect to the responsible third party if the defendant has failed to comply with its obligations, if any, to timely disclose that the person may be designated as a responsible third party under the Texas Rules of Civil Procedure."  TEX.CIV.PRAC. & REM.CODE ANN. § 33.004(d).  True enough, the discovery that Momentum had been served along with the petition was likely not yet due, but prudent counsel might have chosen not to test that provision by waiting until after limitations ran to designate responsible third parties.

[6] Aside from *Crosstex* and *LaLonde*, other courts have resolved waiver questions.  *See Foundation Assessment, Inc. v. O'Connor*, 426 S.W.3d 827, 834 (Tex.App.--Fort Worth 2014, pet. denied) (holding twenty-two month delay and participation in minimal discovery did not waive right to seek dismissal because "we cannot imply waiver based only on delay when the legislature did not provide a deadline for filing a motion to dismiss under section 150.002"); *Murphy v. Gutierrez*, 374 S.W.3d 627, 633 (Tex.App.--Fort Worth 2012, pet. denied) (engineer waived statutory right to dismissal by having substantially invoked litigation process over period of three and one-half years); *Ustanik v. Nortex Foundation Designs, Inc*., 320 S.W.3d 409, 413-14 (Tex.App.--Waco 2010, pet. denied) (holding no waiver although defendants delayed two years and five months to file motion to dismiss, participated in discovery, and filed motions for summary judgment); *Studio E Architecture and Interiors, Inc. v. Lehmberg*, No. 04-19-00026-CV, 2019 WL 3229194, at *4 (Tex.App.--San Antonio Apr. 17, 2019, pet. denied) (mem. op.) (delay of two years and three months in filing its motion to dismiss, without any evidence of participation in discovery or otherwise seeking affirmative relief from the trial court, is insufficient to waive the right to seek dismissal); *DLB Architects, P.C. v. Weaver*, 305 S.W.3d 407, 411 (Tex.App.--Dallas 2010, pet. denied) (holding delay of more than one year to file motion to dismiss did not constitute waiver where there was no evidence in the record of intent to waive rights); *Frazier v. GNRC Realty, LLC.*, 476 S.W.3d 70, 79 (Tex.App.--Corpus Christi 2014, pet. denied) (sixteen-month delay and participation in discovery waived right to insist on filing certificate of merit).  Given the case-by-case nature of the question, and the fact many of these cases predate *LaLonde*, they are of limited help here.

6

Momentum waited seventeen months to file its motion to dismiss. There could be several answers to that question.

One answer might be that it delayed filing its motion to gain some strategic advantage. That seems unlikely, however, because Momentum gained no advantage by delaying the filing of its section 150.002 motion. A party might intentionally delay bringing a dismissal motion until the statute of limitations has run in the event that the trial court dismisses the case without prejudice, which the trial court has the discretion to do. TEX.CIV.PRAC. & REM.CODE ANN. § 150.002(e) ("This dismissal may be with prejudice."); *Pedernal Energy, LLC v. Bruington Engr., Ltd.*, 536 S.W.3d 487, 494 (Tex. 2017) (noting abuse of discretion standard applies to decision to dismiss with or without prejudice). But Momentum gained no advantage vis-à-vis the statute of limitations. Momentum was served thirty days before limitations ran, and it would strain credulity to suggest it could have secured a lawyer, evaluated the case, and prosecuted a motion to dismiss to conclusion in that limited time frame. Thus, whether it filed its motion in the first several months, or the seventeenth month was of no consequence to its legal position.

A second explanation for the delay, and the one Momentum suggested at oral argument, is that it needed to conduct some discovery to better support its motion to dismiss. The certificate of merit requirement applies to any action "arising out of the provision of professional services by a licensed or registered professional[.]" TEX.CIV.PRAC. & REM.CODE ANN. § 150.002(a). The second amended petition which added Momentum alleges fifteen grounds of negligence jointly against Momentum and CSA, only two of which brought section 150.002 in play ("On the occasion in question, Defendants, their agents, representatives and employees were guilty of negligence in one or more of the following alternatives theories of negligence: . . . 3. Negligent design. 4. Negligent engineering"). Momentum shouldered the burden to demonstrate that its professional

7

services provided through a licensed or registered professional underpinned those fifteen grounds of negligence. And the record demonstrates that Gonzalez did not accede to the characterization of Momentum's role. One of the arguments he made below was that his "action" did not "arise out of the provision of professional engineering services." It is understandable for Momentum to engage in some merits based discovery to create a record to rebut that claim. Momentum eventually supported its motion to dismiss with: (1) one page from its corporate representative's deposition attesting that it employs a registered professional engineer; (2) an agreement between itself and El Paso Electric attesting that it was hired to provide engineering services; and (3) an excerpt from the deposition of Gonzalez attesting that his injury was caused by the claimed defective design of a cover. Accordingly, the discovery bolstered the motion, and accounts for some of the seventeen-month delay in pursuing the motion.[7]

The third explanation for the delay--and the one urged by Gonzalez--is that the delay evidences an intent by Momentum to waive its right to seek dismissal under Chapter 150. There might be situations where an architect or engineer might make that decision. They might, for instance, forego dismissal if they sought affirmative relief of some type, or exploited the whole of the litigation process for some other purpose. Nothing in the record suggests that intent here. Momentum did not seek affirmative relief from either CSA or Gonzalez. It, at most, designated El Paso Electric as a responsible third party, as CSA had already done, which would only reduce the share of its potential liability if the case was ever tried. It did not file a motion for summary

_____

[7] Gonzalez responds that no discovery was necessary in light of CSA's motion to designate responsible third parties, filed one day after Momentum answered, that claimed "[CSA] constructed the substation according to the specifications it received from El Paso Electric which were based upon the plans designed by [M]omentum[ ]" and that "Momentum as the professional architect and engineering firm should have designed the substation to provide for the lateral safety support beams." That pleading would be supportive of the motion to dismiss, perhaps highly so, but it would not be conclusive.

8

judgment. It did not designate experts. It did not exhaust any period laid out in the discovery control order.

The last answer to the question of why Momentum delayed filing the motion seems just as likely to me, but less sinister: the case waited its turn to gain the undivided attention of busy counsel, and when it did, counsel pressed a motion as allowed by law. The parties jointly agreed to a discovery control order on December 4, 2017, which stated: "[a]ll motions, that if granted by the court would dispose of part or all of the case, including motions for summary judgment, shall be filed not later than July 13, 2018." Momentum filed its motion two months later, on February 6, 2018, which was more than five months before the dispositive motion deadline.

Because the record does not unequivocally demonstrate conduct inconsistent with the intent to waive its statutorily given right, I would agree with the trial court that there was no waiver on this record. In all other respects, I join the majority opinion.


JEFF ALLEY, Justice

September 9, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

9