LEE ANN DAUPHINOT, JUSTICE
This is an appeal from the dismissal of the claims of Appellants Paul Gosnell and Kim Gosnell for failure to file a certificate of merit required by the civil practice and remedies code[2] in their suit against Appellees Thomas A. LaLonde, Jr., P.E., Individually and d/b/a Lee Engineering Co.; Stanley Harold Prather; and Prather Engineering Consultants, Inc. (collectively, Engineers). In their sole issue, the Gosnells ask whether the trial court erred by dismissing their case when Engineers waited for three and a half years to seek dismissal; moved to dismiss thirty days before trial following both voluntary and court-ordered mediation; and propounded and responded to discovery, designated experts, and sought multiple continuances. Because we hold that Engineers waived their right to dismissal, we reverse the trial court's dismissal order.
Background
On September 22, 2011, the Gosnells sued Engineers for structural damage to their home. They alleged that Engineers had failed to stabilize the home's foundation after injecting a chemical into the surrounding soil. The Gosnells did not file *561 a certificate of merit with their original petition.[3]
Engineers did not file their answer until May 31, 2013. On September 18, 2013, the parties attended a voluntary mediation, which did not result in a settlement. Both sides propounded and responded to discovery requests, and Engineers designated experts and potential responsible third parties. The parties participated in a second mediation, this time court-ordered, which also failed to result in a settlement agreement.
On January 23, 2015, Engineers filed a motion to dismiss based on the Gosnells' failure to provide a certificate of merit at the outset of the case as provided by section 150.002 of the civil practice and remedies code. The trial court granted Engineers' motion to dismiss after a hearing.
The Gosnells now appeal, asserting that prior to the filing of the motion to dismiss, neither Engineers nor their counsel had ever referenced section 150.002, the Gosnells' failure to file the certificate of merit, or Engineers' intent to seek dismissal of the Gosnells' claims.
Standard of Review
We review a trial court's ruling on a motion to dismiss for an abuse of discretion.[4] To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.[5]
Certificates of Merit
In suits "for damages arising out of the provision of professional services by a licensed or registered professional," the civil practice and remedies code requires the plaintiff to provide an affidavit-called a "certificate of merit"-made by a professional who holds the same professional license as the defendant.[6] For each theory of recovery on which the plaintiff is basing a claim for damages, the affidavit "shall set forth specifically ... the negligence, if any, or other action, error, or omission of the ... professional in providing the professional service."[7] If the plaintiff does not file the affidavit in compliance with the statute, the trial court must dismiss the claims against the defendant.[8]
One narrow exception to the dismissal requirement exists: a defendant may be considered to have waived the right to dismissal for failure to file a certificate of merit when, under the totality of the circumstances, the defendant has substantially invoked the judicial process.[9] Waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right."[10] "Waiver is primarily a function of intent," and a court "will not find waiver where a person *562 'says or does nothing inconsistent with an intent to rely upon such right.' "[11] "Generally, waiver presents a question of fact, but 'when the facts and circumstances are admitted or clearly established, the question becomes one of law.' "[12]
Analysis
We now turn to the question of whether Engineers' actions were inconsistent with their intent to rely on their right to waiver. This court first discussed waiver of section 150.002 dismissal in Palladian Building Co.[13] Palladian acknowledged that no case law supported its contention that the doctrine of waiver applied to a dismissal sought under section 150.002, but it made an analogy to arbitration and argued that as with a party seeking to compel arbitration, a right to dismissal under section 150.002 is waived by a party that has substantially invoked the judicial process.[14] We held that regardless of whether waiver may arise in some other case, it was not applicable in that case.[15]
In Murphy v. Gutierrez , we held that the defendant, Gutierrez, had substantially invoked the judicial process prior to filing his motion to dismiss and had thus waived his right to complain about the plaintiffs' failure to file a certificate of merit.[16] Gutierrez had filed a motion to dismiss with his answer, but the trial court did not rule on it, and Gutierrez did not reurge his motion for over three years.[17]
In deciding that Gutierrez had waived his right to move for dismissal, this court considered five factors. First, we considered "whether the defendant participated, and to what extent, in pretrial discovery before moving for a motion to dismiss."[18] Gutierrez had noticed and taken both of the plaintiffs' depositions, and more than a year after the suit was filed, Gutierrez allowed himself to be deposed.[19] He "designated and presented for deposition his own expert witness," propounded written discovery to both the plaintiffs and another defendant, and responded to written discovery.[20]
Second, we considered whether Gutierrez had sought and obtained affirmative relief from the trial court.[21] Gutierrez sought both traditional and no-evidence summary judgments, which the trial court granted in part.[22] "Thus, Gutierrez not only attempted to 'achieve a satisfactory result' by filing his motions for summary judgment, but he allowed the trial court to rule on these motions before ever reurging his motion to dismiss."[23]
The third factor we looked at was "the fact that [Gutierrez] participated in court-ordered mediation regarding th[e] case before ever reurging his motion to dismiss."[24] We concluded that this factor weighted "against Gutierrez and in favor *563 of finding that he intended to waive his right to seek dismissal."[25] Next, we considered at what point during the judicial process Gutierrez had sought dismissal.[26] After having spent three and a half years engaged in the litigation process, "conducting discovery; filing motions for both traditional and no-evidence summary judgment, which the trial court granted in part; participating in court-ordered mediation; and filing claims against co-defendant Classic," only then did Gutierrez reurge his motion to dismiss, and he did so five days before the scheduled trial date.[27] "We conclude[d] that by reurging his motion to dismiss so late in the game and on the eve of trial, Gutierrez evinced intent to waive the right to seek dismissal."[28]
Finally, as a related factor, we considered the amount of time that had elapsed in the litigation process, noting that under the case law dealing with waiver, "even when a party waits more than two years to seek its alternative to litigation, the time elapsed alone does not necessarily constitute evidence of waiver."[29] But we held that in that case, "when coupled with the other factors present-extensive discovery, seeking affirmative action by the trial court, and participating in court-ordered mediation-the over three and one-half years of litigation is a fact that also tends to demonstrate that Gutierrez intended to substantially invoke the judicial process" and to thereby "relinquish his right to seek dismissal."[30] Ultimately, we held that under the totality of the circumstances and the factors showing Gutierriez's intention to litigate, Gutierrez had substantially invoked the judicial process and had waived his right to pursue dismissal.[31]
We considered waiver again in Foundation Assessments .[32] In that case, the defendants did not extensively participate in discovery, including conducting "little to no affirmative discovery"; did not seek affirmative relief in the trial court; did not participate in court-ordered mediation; and overall took no actions inconsistent with an intent to rely on their dismissal right. We therefore held that the defendants had not waived their right to seek dismissal.[33]
In Frazier v. GNRC Realty, LLC , the Corpus Christi Court of Appeals held that the defendant waived his right to dismissal, but not based on the factors we considered in Murphy .[34] The basis of the court's holding was that the defendant admitted in his answer that the design at issue was faulty and admitted in discovery that it was part of his duties to ensure construction in compliance with statutory requirements and regulations.[35] The court decided that these admissions, which gave merit to the plaintiff's claims, obviated the need for a certificate of merit, given that the purpose of the certificate is to deter meritless claims.[36]
On the other hand, courts of appeals have concluded there was no waiver when:
*564 • the defendant waited two years and five months to seek dismissal, participated in an unspecified amount of discovery, and filed motions for summary judgment;[37]
• the defendants waited a year after they were sued to file a motion to dismiss;[38]
• the defendant moved for dismissal eight days after learning of defect in the qualifications of the plaintiff's expert who had provided the certificate;[39] and
• the defendant answered the suit, propounded an unspecified amount of written discovery, and then filed a motion to dismiss.[40]
All but one of these no-waiver cases were issued prior to our opinion in Murphy . After Murphy , the Supreme Court of Texas weighed in on the issue of waiver and the certificate of merit requirement in Crosstex Energy Services, L.P. v. Pro Plus, Inc.[41]
In Pro Plus , the court confirmed that a defendant can indeed waive the certificate-of-merit requirement through substantial invocation of the litigation process, as this court had held.[42] The court then considered several different actions taken by Pro Plus and whether they amounted to waiver.
Specifically, in deciding whether Pro Plus's "engagement in the judicial process amount[ed] to implied waiver," the court considered Pro Plus's answering the suit, its participation in discovery, and its acts near the end of the limitations period of joining a motion for continuance and entering into a Rule 11 agreement.[43] First, the court addressed the question of waiver by discovery participation, holding that "(a)ttempting to learn [through discovery] more about the case in which one is a party does not demonstrate an intent to waive the right to move for dismissal,"[44] and thus "Pro Plus's participation in discovery provides negligible support to the waiver argument."[45] This statement reinforces the concept of waiver arising from the totality of circumstances. While engaging in discovery does provide some support for waiver, it would be unworkable to set a bright-line rule about whether discovery participation indicates waiver and how much discovery is acceptable, totally divorced from the facts and history of the case at hand. In some cases, active participation in discovery might show waiver, when set in the context of that particular case. But a court cannot say that a party's attempting to learn more about a case before deciding whether to seek dismissal is in every case, in every context, a clear demonstration of waiver, absent other supporting circumstances. Instead, a party's engaging in discovery is merely one factor *565 to consider.[46]
The court then addressed the fact that Pro Plus had filed an answer to the suit.[47] To that the court stated that filing an answer is "inconsequential in the analysis" because "[w]e should not penalize parties or their attorneys for acting out of an abundance of caution and protecting their interests by filing an answer."[48] Aside from any other consideration, a party who does not file an answer faces the possibility of a no-answer default judgment being rendered before the party has a chance to file its motion to dismiss.[49] Nothing about filing an answer is inherently incompatible with an intent to avail oneself of the right to have the suit dismissed.
Finally, the court looked at the other activity relied on by Crosstex as evidence of waiver: the joint motion for continuance and the Rule 11 agreement. The court stated that "the Rule 11 agreement allowed Pro Plus ample time to prepare its expert reports in the event its motion to dismiss was denied (which is precisely what happened)."[50] The court did not discuss the motion for continuance but evidently did not consider it as an indication of an intent to waive the dismissal right. The court concluded its discussion of the issue by stating that Crosstex had offered some support for its waiver argument, but not enough.[51] Unlike in Murphy , the Pro Plus opinion has no indication that Pro Plus had sought and obtained affirmative relief such as summary judgment or had participated in court-ordered alternative means of dispute resolution.
Pro Plus aids litigants and courts addressing waiver in two ways. First, it settles the question of whether a defendant in a suit to which section 150.002 applies may waive the dismissal right. Second, the court's guidance confirms how lower courts have addressed the issue in at least one respect: in the usual case, one factor alone-such as engaging in discovery-will not show the intentional relinquishment of the right of waiver. From this case and the others that have looked at the issue, it is clear that a question of waiver is intensely fact-specific and must be looked at on a case-by-case basis.[52] With that in mind, we consider the circumstances of this case.
This suit was filed on September 22, 2011. After a lengthy delay, on May 31, 2013, Engineers filed their answer, asserting *566 not just a general denial but also affirmative defenses and a request for attorneys' fees. On August 21, 2013, the trial court signed an agreed scheduling order, setting a trial date for January 27, 2014.
On September 18, 2013, the parties attended an unsuccessful voluntary mediation. Also in September, the Gosnells served Engineers with their first amended petition. Engineers filed an amended answer on October 2, 2013, adding specific denials, a number of verified denials, and additional affirmative defenses.
Also in 2013, Engineers responded to the Gosnells' requests for disclosures and production of documents and designated two non-party experts to testify to the technical and chemical aspects of the services provided and the soils under the foundation of the Gosnells' home. Engineers also served a request for disclosures on the Gosnells.
Engineers filed a motion for leave to designate Earth Science Products, the manufacturer of the chemical used by Engineers to stabilize the Gosnells' foundation, as a responsible third party. On January 14, 2014, the court granted an agreed motion for continuance requested by Engineers, postponing the trial originally set for January 27, 2014.
Engineers served their first amended responses to the Gosnells' request for disclosure, naming Earth Science Products as a potential responsible third party. Engineers filed a supplement to their amended answer, adding additional specific denials and affirmative defenses.
In November 2014, both parties submitted a second agreed scheduling order to set the case for a jury trial on February 23, 2015, and providing for amended pretrial deadlines, including new expert designation deadlines. The scheduling order set a deadline ten days before the trial date for the parties to attend a court-ordered mediation. In December 2014, Engineers served interrogatories, requests for disclosures, and requests for production on the Gosnells.
That same month, Engineers served their second amended response to the Gosnells' request for disclosure, adding Shaddock Builders & Developers, Inc.-the builder of the Gosnells' home-as a potential responsible third party. On the same day, Engineers filed a second motion for leave to designate responsible third parties, seeking to designate Shaddock as an additional responsible third party.
On January 8, 2015, the Gosnells filed their responses to Engineers' discovery requests. After the discovery deadline had passed, the parties attended court-ordered mediation. One month before the re-set trial date-twenty months after filing their answer and over three years after suit had been filed-Engineers moved for dismissal under section 150.002.
A delay in moving for dismissal generally does not alone show waiver.[53] Likewise, designating responsible third parties and experts does not necessarily show waiver.[54] And clearly, the mere fact of trying to settle a case informally before *567 trial does not, by itself, indicate any intent not to litigate. But the totality of the circumstances here paints the picture of defendants who did not intend to take advantage of their right to dismissal.
Engineers told the trial court that their delay in filing an answer was because the parties were attempting to "just resolve this matter," and therefore the matter had not been in litigation for more than three years before they filed their motion to dismiss. In other words, they attempted to settle the case for twenty months before they even filed an answer. They therefore had ample opportunity to learn about the case and wrap their minds around it.[55] They then participated in voluntary mediation, giving them more opportunity to learn about the case and decide whether to move for dismissal. Instead, they proceeded with the litigation process for another fifteen months. They propounded discovery, designated experts, and designated responsible third parties, completing the discovery process. And then, when the trial court ordered the parties to attend a second mediation, Engineers attended and participated rather than seek a dismissal.[56]
A defendant should not be penalized for attempting to settle a dispute, and it is not because Engineers attempted to settle the case that we conclude Engineers intended to litigate. Rather, it is the entirety of the circumstances. The settlement talks went on for eighteen months after Engineers had already been sued-which gave them a reason to take the Gosnells' complaints seriously. They therefore had both the motive and opportunity to understand the case against them. During that time, when the Gosnells apparently could have moved for a no-answer default judgment but did not, Engineers had the chance to plan out a defense, including deciding whether to move for dismissal. But they did not move for a dismissal, and instead continued with the litigation process, including waiting until all of the scheduling deadlines save the trial had passed and attending court-ordered mediation. All in all, Engineers' failure to move for dismissal allowed the process to drag on for three-and-a-half years. Only when trial was thirty days away did they finally move for dismissal.
As we observed in Murphy , the purpose of section 150.002 is "both to quickly dismiss meritless claims and to reduce litigation costs."[57] Engineers had years to learn whether the Gosnells' claims had merit, and a party who waits until the eve of trial[58] to move for dismissal has obviated much of the cost reduction a dismissal would allow, while increasing the costs for the other party and for the court system. Here, as in Murphy , Engineers waited until "late in the game and on the eve of trial" to move for dismissal.
Furthermore, however complicated rebutting the Gosnells' claims may have proven to be at trial, this was not a factually complicated case. The foundation of the Gosnells' home was experiencing movement, so the Gosnells hired Engineers to *568 stabilize it. To that end, Engineers injected a chemical into the ground. The Gosnells sued on the basis that the service provided by Engineers made the foundation movement worse. By the time Engineers filed an answer, they knew the exact basis of the Gosnells' claims, including the name of the product alleged to be used. As a defense, Engineers claimed that they did not make the chemical that was injected into the soil and that they did not breach any duty owed to the Gosnells. In November 2013, Engineers designated the manufacturer of the chemical as a responsible third party and designated experts to testify about the soil and the chemical used, and they then continued to engage in the litigation process.
Given the delay in answering combined with the basis of the claims and Engineers' understanding of them, delaying dismissal to engage in discovery cannot reasonably be explained on the basis that Engineers needed to learn more about the case from discovery before deciding to move for dismissal. Nor does it make sense to conclude that they engaged in discovery and other parts of the litigation process in case the trial court denied their motion to dismiss. If they were concerned that they would need to be prepared for trial were their motion denied, they could have moved for dismissal anytime in the three-and-half year process and still had plenty of time to prepare for trial. Instead, they continued to participate in the judicial process, including attending court-ordered mediation.
Though not one factor alone indicates waiver, under the totality of circumstances, Engineers' engagement in the judicial process indicated their intention to litigate and amounted to waiver. In reaching this conclusion, we reiterate that our holding is based on and limited to the specific facts and circumstances of this case. We sustain the Gosnells' issue.
Conclusion
Having sustained the Gosnells' sole issue, we reverse the trial court's order of dismissal and remand this case for further proceedings.

Tex. Civ. Prac. & Rem. Code Ann. § 150.002 (West 2011).

See id.

Jernigan v. Langley , 195 S.W.3d 91, 93 (Tex. 2006) ; Palladian Bldg. Co., Inc. v. Nortex Found. Designs, Inc. , 165 S.W.3d 430, 433 (Tex. App.-Fort Worth 2005, no pet.).

Cire v. Cummings , 134 S.W.3d 835, 838-39 (Tex. 2004).

Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a).

Id. § 150.002(b).

Id. § 150.002(e).

See Murphy v. Gutierrez , 374 S.W.3d 627, 635 (Tex. App.-Fort Worth 2012, pet. denied) (holding that under the totality of the circumstances, the defendant had substantially invoked the judicial process and had thereby waived the right to pursue dismissal).

Jernigan v. Langley , 111 S.W.3d 153, 156 (Tex. 2003) (citations and internal quotation marks omitted).

Crosstex Energy Servs., L.P. v. Pro Plus, Inc. , 430 S.W.3d 384, 393-94 (Tex. 2014) (citation omitted).

Id. (citation omitted).

Palladian Bldg. , 165 S.W.3d at 434.

Id.

Id. at 435.

Murphy , 374 S.W.3d at 628.

Id. at 629.

Id. at 633.

Id.

Id.

Id. at 634.

Id.

Id. (citation omitted).

Id.

Id.

Id. at 634-35.

Id. at 635.

Id.

Id.

Id.

Id.

Found. Assessment, Inc. v. O'Connor, 426 S.W.3d 827, 831 (Tex. App.-Fort Worth 2014, pet. denied).

Id. at 833-34.

476 S.W.3d 70, 71, 74-75 (Tex. App.-Corpus Christi 2014, pet. denied).

Id.

Id.

Ustanik v. Nortex Found. Designs , 320 S.W.3d 409, 413-14 (Tex. App.-Waco 2010, pet denied).

DLB Architects, P.C. v. Weaver , 305 S.W.3d 407, 411 (Tex. App.-Dallas 2010, pet. denied).

Landreth v. Las Brisas Council of Co-Owners, Inc. , 285 S.W.3d 492, 501 (Tex. App.-Corpus Christi 2009, no pet.) (overruled by statute on other grounds).

Cimarron Eng'g, LLC v. Miramar Petroleum, Inc. , No. 13-14-00163-CV, 2014 WL 2937012, at *2, *5 (Tex. App.-Corpus Christi June 26, 2014, no pet.) (mem. op.).

430 S.W.3d at 391.

Id. at 393-94.

Id.

Id. at 394 (citation and internal quotation marks omitted).

Id.

See, e.g. , Perry Homes v. Cull , 258 S.W.3d 580, 592 (Tex. 2008) (stating, in the context of arbitration, that "how much discovery has been conducted" is a factor courts consider in determining whether waiver has occurred through substantial invocation of the judicial process); see also Jernigan , 111 S.W.3d at 157 (stating, in a health care liability case, that "[a]ttempting to learn more about the case in which one is a party does not demonstrate an intent to waive the right to move for dismissal ..., especially when , as here, most of the defendant's participation was in response to discovery initiated by the plaintiff" (emphasis added) ).

Pro Plus , 430 S.W.3d at 394.

Id. (citation omitted).

See Tex. R. Civ. P. 239.

Pro Plus , 430 S.W.3d at 395.

Id.

See Murphy , 374 S.W.3d at 635 (looking at the totality of the circumstances); Perry Homes , 258 S.W.3d at 591-92 (stating with regard to the right to seek arbitration that "waiver must be decided on a case-by-case basis, and that courts should look to the totality of the circumstances," recognizing "the difficulty of uniformly applying a test based on nothing more than the totality of the circumstances," but concluding that "there appears to be no better test for substantial invocation" (footnotes and internal quotation marks omitted) ).

See Murphy , 374 S.W.3d at 635 (recognizing that in most cases dealing with waiver, in considering a party's delay seeking an alternative to litigation, "the time elapsed alone does not necessarily constitute evidence of waiver," but holding that coupled with other factors, the over three and half years of litigation in that case was a factor that tended to demonstrate the defendant's intent to relinquish his right to seek dismissal).

Cf. RSL Funding, LLC v. Pippins , 499 S.W.3d 423, 430-31 (Tex. 2016) (stating that the defendant builder's "designation of responsible third parties and trial experts was necessitated by procedural deadlines" and therefore did not show waiver of arbitration).

See Pro Plus , 430 S.W.3d at 394 ("The discovery process streamlines the insatiable quest for information as the parties try to wrap their minds around the case.").

See Murphy , 374 S.W.3d at 635 (noting that attending court-ordered mediation was a factor pointing toward waiver).

Id. at 632.

See Perry Homes , 258 S.W.3d at 596 (stating that "[t]he rule that one cannot wait until 'the eve of trial' to request arbitration is not limited to the evening before trial; it is a rule of proportion that is implicated here" and referencing Com-Tech Assocs. v. Computer Assocs. Int'l, Inc. , 938 F.2d 1574, 1576-77 (2d Cir. 1991), "in which arbitration was waived by request that did not come until 18 months after filing and 4 months before trial").