

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00026-CV

**STUDIO E ARCHITECTURE AND INTERIORS, INC.**,
Appellant

v.

Emily **LEHMBERG**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-CI-10649
Honorable Cathleen M. Stryker, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Beth Watkins, Justice

Delivered and Filed: April 17, 2019

REVERSED AND REMANDED

Appellant Studio E Architecture and Interiors, Inc. ("Studio E") files this accelerated appeal from the trial court's order denying its motion to dismiss pursuant to Texas Civil Practice and Remedies Code section 150.002. Because we conclude dismissal is required, we reverse the trial court's order and remand this cause to the trial court for a determination of whether dismissal should be with or without prejudice to refiling.

**Background**

In 2012, appellee Emily Lehmberg ("Lehmberg") hired Projekt Construction, Inc. ("Projekt") to perform construction on residential real property located in San Antonio. Lehmberg alleges Joaquin and Aimee Escamilla ("the Escamillas") initially represented that Projekt was a partnership between themselves and another individual. Projekt shared office space with Studio E—a separate company also owned by the Escamillas. Lehmberg contends Projekt's construction permit for the property was revoked, and the Escamillas subsequently began representing that the construction project belonged to Studio E. According to Lehmberg's pleading, Studio E was "the de facto General Contractor at the Property" and ultimately "conducted construction management and oversaw the project at the Property."

In an affidavit submitted in the trial court, Aimee Escamilla contends: "To the extent that Studio E. provided any services[,] they related to construction administration, which is considered a function of the practice of architecture in Texas." There is no dispute that Aimee Escamilla is a registered interior designer and Joaquin Escamilla is an architect licensed by the State of Texas. According to the Escamillas, "Studio E. is engaged in the practice of architecture in Texas."

In June 2016, Lehmberg sued Studio E, the Escamillas, and others, alleging the Escamillas, as representatives of Studio E, "manipulated, forged, and double paid on multiple invoices which greatly increased the cost of construction." Against Studio E specifically, Lehmberg asserted claims for violations of the Texas Deceptive Trade Practices Act (DTPA), common law fraud, money had and received, and breach of fiduciary duty. Lehmberg claimed Studio E and the other defendants "committed fraud by making material misrepresentations regarding pricing and invoicing," "purposefully manipulated documents to hide their wrongful payments to contractors, double payments to contractors, and payments to themselves," and "misappropriated and misapplied proceeds from [Lehmberg's] construction trust fund." In her second amended petition,

Lehmberg expressly denied asserting any claims against Studio E "arising from its provision[ ] of Professional Services, as that term is used in § 150 of the TEX. CIV. PRAC. & REM. CODE." Lehmberg pleaded: "The claims brought against Studio E stem not from the 'Practice of Architecture' as defined by the Texas Occupations Code. Studio E was not the architect on the Project at issue, nor did it perform architectural practices, nor does [Lehmberg] complain of any architectural practices in this claim against Studio E."

Studio E filed its original answer in August 2016. In November 2018, Studio E filed a motion to dismiss with prejudice all claims asserted against it on the basis that Lehmberg did not attach to her pleading a certificate of merit required by Texas Civil Practice and Remedies Code section 150.002. The trial court denied the motion, and Studio E brings this accelerated appeal.

## Discussion

In two issues, Studio E argues the trial court erred by denying its motion to dismiss because: (1) Lehmberg was required to attach a certificate of merit to her original petition, and (2) Studio E did not waive its right to seek dismissal.

### A.    Standard of review

Texas Civil Practice and Remedies Code section 150.002 requires that "[i]n any action . . . for damages arising out of the provision of professional services by a licensed or registered professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party licensed architect . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a). A "licensed or registered professional" includes a licensed architect or "any firm in which such licensed or registered [architect] practices," including a corporation. *Id.* § 150.001(1-a). A plaintiff's failure to file the required affidavit, known as a certificate of merit, "shall result" in dismissal of the plaintiff's claims against the defendant. *Id.* § 150.002(e). The dismissal may be with or without prejudice. *Id.*

We review the trial court's denial of a section 150.002 motion to dismiss for abuse of discretion. *Bruington Eng'g Ltd. v. Pedernal Energy L.L.C.*, 403 S.W.3d 523, 526 (Tex. App.—San Antonio 2013, no pet.). To the extent we are required to interpret statutory language, we do so de novo. *Id.* (citing *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009)).

**B.      Application**

In this case, we first determine whether Lehmberg was required to attach a certificate of merit to her pleading. Where required, a certificate of merit must be filed with the original petition. *Pelco Constr., Inc. v. Dannenbaum Eng'g Corp.*, 404 S.W.3d 48, 53 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("When required, the certificate of merit must be filed with the *first-filed* complaint asserting the relevant claim against a professional." (emphasis added)) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a)). In construing Lehmberg's claims, however, we consider the live pleading on file when the trial court considered the motion to dismiss—the second amended petition. *See id.*

Lehmberg does not dispute that Joaquin Escamilla is a licensed architect and Studio E is a "licensed or registered professional" as that term is defined by the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.001(1-a). Instead, Lehmberg argues the statute does not apply to her claims because they do not arise out of the provision of professional services. According to Lehmberg, the "acts complained of" consist of "requiring [Lehmberg] to overpay and double billing through fraudulent invoices," which are not the provision of professional services. Lehmberg also emphasizes the disclaimer in her second amended petition stating she does not assert any claims "arising from [Studio E's] provision[ ] of Professional Services, as that term is used in § 150 of the TEX. CIV. PRAC. & REM. CODE" because "Studio E was not the architect on the Project at issue, nor did it perform architectural practices, nor does [Lehmberg] complain of any architectural practices in this claim against Studio E."

We are not limited, however, by Lehmberg's characterization of her own claims. *See Carter & Burgess, Inc. v. Sardari*, 355 S.W.3d 804, 810 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Instead, to determine whether Lehmberg's claims "arise out of" Studio E's provision of "professional services" within the meaning of section 150.002(a), we must look to whether the claims implicate the professional's education, training, and experience in applying special knowledge or judgment. *See Pelco Constr.*, 404 S.W.3d at 55–56; *TDIndustries, Inc. v. Rivera*, 339 S.W.3d 749, 754 (Tex. App.—Houston [1st Dist.] 2011, no pet.). We also consider the statutory definition of the "practice of architecture" in the Occupations Code. *See Rivera*, 339 S.W.3d at 754 (citing the definition of "engineering" in the Occupations Code). The Occupations Code defines the "practice of architecture" as:

> a service or creative work applying the art and science of developing design concepts, planning for functional relationships and intended uses, and establishing the form, appearance, aesthetics, and construction details for the construction, enlargement, or alteration of a building or environs intended for human use or occupancy, the proper application of which requires education, training, and experience in those matters. The term includes: . . .
>
> (B) preparing, or supervising and controlling the preparation of, the architectural plans and specifications that include all integrated building systems and construction details, unless otherwise permitted under Section 1051.606(a)(4);
>
> (C) observing the construction, modification, or alteration of work to evaluate conformance with architectural plans and specifications described in Paragraph (B) for any building, group of buildings, or environs requiring an architect; . . .

TEX. OCC. CODE ANN. § 1051.001(7) (B), (C).

Even claims that do not appear to implicate a professional's education, training, or experience, such as intentional torts, nevertheless may arise out of the provision of professional services if the alleged wrongdoing was done in the context of providing professional services. For example, in *Pelco Construction*, our sister court held claims against professionals for fraudulent

misrepresentations regarding FEMA-approved funding made during a pre-bid conference arose out of the provision of professional services because the alleged misrepresentations were made in the context of the professionals' participation in the redesign and construction of a fire station. 404 S.W.3d at 55–56. In a similar case, the court of appeals held claims against professionals for misrepresentations regarding whether easements had been obtained arose out of the provision of professional services because "the only reason that [the plaintiff] would have to rely upon [defendant's unlicensed employee's] alleged false representations . . . was because the statements were made as part of [defendant's] performing a professional service necessary for the planning, progress, or completion of [its] engineering services." *Capital One, N.A. v. Carter & Burgess, Inc.*, 344 S.W.3d 477, 481 (Tex. App.—Fort Worth 2011, no pet.).

Here, Lehmberg alleges DTPA violations, common law fraud, money had and received, and breach of fiduciary duty against Studio E. The crux of Lehmberg's claims is not that Studio E was negligent in providing architectural services, but rather that Studio E wrongfully caused Lehmberg to overpay for the residential construction project. Although Lehmberg pleaded "Studio E was not the architect on the Project at issue" and did not "perform architectural practices" on the project, she also pleaded Studio E "conducted construction management and oversaw the project at the Property" as the "de facto General Contractor."

At least one of our sister courts has held similar project management work fits within the statutory definition of the "practice of architecture." *See Sardari*, 355 S.W.3d at 810. In that case, the plaintiff claimed the defendant professional negligently inspected a stainless-steel door, jam, and frame installed as part of a construction project. *Id*. Although the plaintiff argued the defendant "was not functioning as an architect, but merely performing the function of an unlicensed project manager" doing work not requiring an architectural license, the court held the allegations fit within the statutory definition of the practice of architecture because they "involve[d] 'observing the

construction, modification, or alternation of work to evaluate conformance with architectural plans and specifications.'" *Id.* (quoting TEX. OCC. CODE ANN. § 1051.001(7)(C)).

Here, too, by alleging Studio E "conducted construction management and oversaw the project at the Property," Lehmberg alleges conduct involving "observing the construction, modification, or alteration of work to evaluate conformance with architectural plans and specifications." *See* TEX. OCC. CODE ANN. § 1051.001(7)(C). And, while Lehmberg does not assert Studio E was negligent in doing so, Studio E's alleged misconduct necessarily took place in the context of that activity. Therefore, we conclude that like the plaintiffs in *Pelco Construction* and *Capital One*, Lehmberg seeks damages "arising out of the provision of professional services by a licensed or registered professional." TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a); *see also Pelco Constr.*, 404 S.W.3d at 55–56; *Capital One*, 344 S.W.3d at 481.

Because Lehmberg failed to attach a certificate of merit to her original pleading asserting claims against Studio E, we are constrained to hold the trial court erred in denying Studio E's motion to dismiss unless, as Lehmberg argues, Studio E waived its right to seek dismissal.

## C. Waiver

Lehmberg argues that even if a certificate of merit were required, Studio E waived its right to seek dismissal on this basis. In its second issue, Studio E argues it did not waive its rights because it did not substantially invoke the judicial process prior to moving for dismissal.

Several of our sister courts have held a defendant may "invoke the judicial process to such a degree" as to "forfeit its right to seek dismissal under section 150.002." *Murphy v. Gutierrez*, 374 S.W.3d 627, 630 (Tex. App.—Fort Worth 2012, pet. denied) (compiling authorities). "Some factors significant to the issue of whether a party waived its right to move for dismissal under section 150.002 include, among other factors, the moving party's degree of participation in discovery; whether the party sought affirmative action or judgment on the merits; and at what time

during the judicial process the party sought dismissal." *Id.* at 633 (citations omitted). Any conduct demonstrating waiver must be evident in the record on appeal. *See id.*

Lehmberg argues Studio E waived its right to seek dismissal by "participat[ing] in substantial written discovery," "attend[ing] two depositions, including the deposition of Aimee Escamilla, and the deposition of Plaintiff Emily Lehmberg," and waiting "over thirty-two months [*sic*][1] after filing its answer, and less than three months prior to the February 11, 2019 trial setting," before filing the motion to dismiss. While Studio E does not expressly deny that its counsel attended two depositions, there is no evidence in the record on appeal demonstrating Studio E noticed or participated in any depositions or engaged in any written discovery. The record also does not reflect that Studio E sought any affirmative relief or judgment on the merits at any time prior to filing its motion to dismiss.

Further, while it is apparent from the record that Studio E did not file its motion to dismiss until over two years after filing its answer, that fact alone is insufficient to demonstrate waiver. *See id.* at 635 ("[E]ven when a party waits more than two years to seek its alternative to litigation, the time elapsed alone does not necessarily constitute evidence of waiver."); *Found. Assessment, Inc. v. O'Connor*, 426 S.W.3d 827, 833–34 (Tex. App.—Fort Worth 2014, pet. denied) (holding twenty-two month delay and participation in minimal discovery did not waive right to seek dismissal because "we cannot imply waiver based only on delay when the legislature did not provide a deadline for filing a motion to dismiss under section 150.002"); *Ustanik v. Nortex Found. Designs, Inc.*, 320 S.W.3d 409, 413–14 (Tex. App.—Waco 2010, pet. denied) (holding no waiver although defendants delayed two years and five months to file motion to dismiss, participated in discovery, and filed motions for summary judgment); *DLB Architects, P.C. v. Weaver*, 305 S.W.3d

---

[1] Studio E filed its original answer on August 1, 2016 and its motion to dismiss on November 16, 2018—twenty-seven months, or two years and three months, later.

407, 411 (Tex. App.—Dallas 2010, pet. denied) (holding delay of more than one year to file motion to dismiss did not constitute waiver where there was no evidence in the record of intent to waive rights).

We conclude Studio E's delay of two years and three months in filing its motion to dismiss, without any evidence in the record that Studio E substantially participated in discovery or otherwise sought any affirmative relief from the trial court, is insufficient to waive the right to seek dismissal pursuant to section 150.002. Because Lehmberg failed to attach a certificate of merit to her original pleading and Studio E did not waive its right to seek dismissal under section 150.002, we conclude the trial court erred in denying Studio E's motion to dismiss.

## Conclusion

Because we conclude the trial court erred in denying Studio E's motion to dismiss pursuant to Texas Civil Practice and Remedies Code section 150.002, we reverse the trial court's order and remand this cause to the trial court to determine whether dismissal should be with or without prejudice to refiling.

Sandee Bryan Marion, Chief Justice